PROMED HEALTHCARE v CITY OF KALAMAZOO

Docket No. 224440. Submitted September 12, 2001, at Lansing. Decided
        February 1, 2002, at 9:00 A.M.

    ProMed Healthcare petitioned the Tax Tribunal, seeking an order stat-
    ing that it was exempt from ad valorem taxation on its personal
    property by the city of Kalamazoo under either MCL 211.7r, the
    health care exemption, or MCL 211.7o, the charitable purpose
    exemption. The Tax Tribunal denied the request. The petitioner
    appealed.

        The Court of Appeals *held*:

        1. The beyond a reasonable doubt standard of proof applies
    where a petitioner before the Tax Tribunal attempts to establish a
    class of exemptions. The preponderance of the evidence standard
    of proof applies where the petitioner attempts to establish member-
    ship in an already exempt class. Here, the Tax Tribunal properly
    applied the preponderance of the evidence standard.

        2. The Tax Tribunal properly determined that MCL 211.7r grants
    an exemption only to a nonprofit trust that owns the real estate on
    which the personal property subject to the tax is located. The peti-
    tioner failed to prove that it owned the real property on which the
    personal property was located.

        3. The petitioner failed to carry its burden of proving entitlement
    to the charitable purpose exemption.

        Affirmed.

1. TAXATION — EXEMPTIONS — STANDARD OF PROOF.

    The beyond a reasonable doubt standard of proof applies in an action
    before the Tax Tribunal where the petitioner attempts to establish a
    class of exemptions; the preponderance of the evidence standard
    applies where the petitioner attempts to establish membership in
    an already exempt class.

2. TAXATION — EXEMPTIONS — AD VALOREM TAXATION.

    The statute that exempts from taxation the "real estate with the build-
    ings and other property located on the real estate on that acreage,
    owned and operated by a nonprofit trust" grants an exemption
    from taxation only to a nonprofit trust that owns the real estate on

which the personal property subject to the ad valorem tax is located (MCL 211.7r).

*Miller, Johnson, Snell & Cummiskey, P.L.C.* (by *Daniel P. Perk*), for ProMed Healthcare.

*Robert H. Cinabro,* City Attorney, and *A. Lee Kirk,* Deputy City Attorney, for the city of Kalamazoo.

Amicus Curiae:

*Reed, Stover & O'Connor, P.C.* (by *Richard D. Reed* and *Patricia R. Mason*), for Michigan Municipal League.

Before: O'CONNELL, P.J., and WHITE and SMOLENSKI, JJ.

SMOLENSKI, J. Petitioner ProMed Healthcare appeals as of right from the Tax Tribunal order denying its request for tax-exempt status concerning ad valorem taxation on its personal property by respondent city of Kalamazoo. ProMed claimed that it qualified for either the "public health exemption," MCL 211.7r, or the "charitable purpose exemption," MCL 211.7o. Petitioner and respondent presented the dispute to the Tax Tribunal pursuant to a lengthy stipulation of facts. The Tax Tribunal ruled that ProMed was not entitled to either of the claimed tax exemptions. ProMed appeals as of right. We affirm.

I. STANDARD OF REVIEW

In *Rose Hill Center, Inc v Holly Twp,* 224 Mich App 28, 31; 568 NW2d 332 (1997), this Court set forth the standard by which we review decisions of the Tax Tribunal:

Judicial review of a determination by the Tax Tribunal is limited to determining whether the tribunal made an error of law or applied a wrong [legal] principle. Generally, this Court will defer to the Tax Tribunal's interpretation of a statute that it is delegated to administer. The factual findings of the tribunal are final, provided that they are supported by competent, material, and substantial evidence on the whole record. [Citations omitted.]

II. BURDEN OF PROVING ENTITLEMENT TO A TAX EXEMPTION

In its initial opinion, the Tax Tribunal ruled that a petitioner seeking a tax exemption bears the burden of proving its entitlement to the exemption beyond a reasonable doubt. After ProMed filed a motion for reconsideration, the Tax Tribunal modified its ruling, determining that a petitioner need only establish its entitlement to an exemption by a preponderance of the evidence. The Tax Tribunal concluded that ProMed had failed to establish its entitlement to either of the claimed tax exemptions by a preponderance of the evidence. On appeal, the parties contest the burden of proof that should be applied to a petitioner's request for tax-exempt status. We conclude that the Tax Tribunal correctly applied the preponderance of the evidence standard in the present case.

In order to determine the applicable burden of proof in tax exemption cases, we begin by examining precedent from our Supreme Court. In *Ladies Literary Club v Grand Rapids*, 409 Mich 748, 754; 298 NW2d 422 (1980), the Court quoted with favor the following passage from Justice COOLEY's treatise on taxation:

"Exemptions are never presumed, the burden is on a claimant to establish clearly his right to exemption, and an

alleged grant of exemption will be strictly construed and cannot be made out by inference or implication but must be *beyond reasonable doubt*." [Quoting 2 Cooley, Taxation (4th ed), § 672, pp 1403-1404 (emphasis added).]

From the above language, we might draw the conclusion that a petitioner must prove its entitlement to a claimed tax exemption beyond a reasonable doubt. However, we note that the *Ladies Club* decision did not directly consider the appropriate burden of proof in tax exemption cases and merely included the above quotation during its general explanation of tax exemption principles.

Several decisions of this Court have more directly addressed the appropriate burden of proof in tax exemption cases. First, in *Retirement Homes of the Detroit Annual Conference of the United Methodist Church, Inc v Sylvan Twp*, 92 Mich App 560, 563; 285 NW2d 375 (1979), rev'd on other grounds 416 Mich 340; 330 NW2d 682 (1982), this Court held that the standard of proof depends on the type of claim that the petitioner advances before the Tax Tribunal. This Court ruled that the beyond a reasonable doubt standard applies when the petitioner attempts to establish that an entire class of exemptions was intended by the Legislature. *Id.* However, the preponderance of the evidence standard applies when the petitioner attempts to establish that it is a member of an already exempt class. *Id.*[1]

---

[1] Respondent argues that the *Retirement Homes* decision lacks precedential value because our Supreme Court's subsequent decision in *Ladies Club, supra*, applied the beyond a reasonable doubt standard to the petitioner's exemption claim. We disagree. As explained above, the *Ladies Club* decision did not directly consider the burden of proof issue.

Four years later, in *Michigan United Conservation Clubs v Lansing Twp*, 129 Mich App 1, 11; 342 NW2d 290 (1983), mod on other grounds 423 Mich 661; 378 NW2d 737 (1985), this Court held that a petitioner before the Tax Tribunal must establish its entitlement to a tax exemption beyond a reasonable doubt. The decision did not discuss the *Retirement Homes* ruling and did not indicate that the applicable burden of proof differed depending on the type of claim advanced by the petitioner. Rather, the decision relied on Justice COOLEY's remarks as quoted in *Ladies Club*, *supra*.

Finally, in *Holland Home v Grand Rapids*, 219 Mich App 384, 393-394; 557 NW2d 118 (1996), this Court returned to the holding of *Retirement Homes*, recognizing a distinction between a petitioner's attempt to establish a class of exemptions and an attempt to establish membership in an already exempt class. Because the petitioner in that case was attempting to prove the latter, this Court held that the preponderance of the evidence standard applied and that the Tax Tribunal committed error requiring reversal in applying the beyond a reasonable doubt standard to the petitioner's claim. *Id.* at 394-395.

Because our Supreme Court did not directly address the proper burden of proof in the *Ladies Club* decision, and because this Court is required to follow the *Holland Home* ruling under MCR 7.215(I)(1), we conclude that the beyond a reasonable doubt standard applies only when a petitioner before the Tax Tribunal attempts to establish a class of exemptions; the preponderance of the evidence standard applies to a petitioner's attempts to establish

membership in an already exempt class.[2] In the present case, there is no question that the public health exemption and the charitable purpose exemption are established classes of exemptions. MCL 211.7o, 211.7r. The issue presented here is whether ProMed properly established membership in either one of those exempt classes. Accordingly, we conclude that the Tax Tribunal properly recognized that ProMed was only required to establish its entitlement to exemption by a preponderance of the evidence.

ProMed next argues that the Tax Tribunal's decision should be reversed because the tribunal applied the incorrect burden of proof below. We note that the Tax Tribunal explicitly stated that it had applied the preponderance of the evidence standard and found ProMed's claim wanting. Nevertheless, ProMed argues that the tribunal's decision erected so many "irrational or unlawful barrier[s]" to ProMed's claimed tax-exempt status that the tribunal must have applied the beyond a reasonable doubt standard. We disagree. ProMed has simply failed to prove its entitlement to either of the claimed exemptions by a preponderance of the evidence.

### III. OWNERSHIP OF REAL PROPERTY AND THE PUBLIC HEALTH EXEMPTION

ProMed argues that it is entitled to an exemption from ad valorem taxation on its personal property under MCL 211.7r, the "public health exemption." The statute provides, in pertinent part:

---

[2] Furthermore, we do not believe that *Ladies Club* necessarily conflicts with *Holland Home* because the latter decision recognized that the beyond a reasonable doubt standard applies in certain cases, i.e., where the petitioner seeks to establish a class of exemptions.

The real estate with the buildings and other property located on the real estate on that acreage, owned and occupied by a nonprofit trust and used for hospital or public health purposes is exempt from taxation under this act, but not including excess acreage not actively utilized for hospital or public health purposes and real estate and dwellings located on that acreage used for dwelling purposes for resident physicians and their families. [MCL 211.7r]

The Tax Tribunal ruled that a petitioner seeking an exemption under MCL 211.7r is required to prove that it owns the real property on which the personal property subject to the tax is located. Because ProMed failed to prove that it owned the real property, the Tax Tribunal concluded that it was not entitled to exemption under MCL 211.7r.[3] On appeal, ProMed does not contend that it owned the real property during the relevant period. Rather, ProMed argues that the statute does not require ownership of the real estate on which the personal property is located, but requires only that the petitioner own the personal property in question.

In *Rose Hill, supra* at 32, this Court set forth the applicable principles of statutory construction:

Statutory interpretation is a question of law subject to review de novo on appeal. The primary goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature in enacting a provision. Statutory language should be construed reasonably, keeping in mind the purpose of the statute. The first criterion in determining intent is the specific language of the statute. If the statutory language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the

---

[3] The Tax Tribunal also noted that ProMed sought exemption for personal property only, and did not seek exemption for the real property on which the personal property was located.

statute as written. However, if reasonable minds can differ regarding the meaning of a statute, judicial construction is appropriate. [Citations omitted.]

On appeal, we will defer to the Tax Tribunal's interpretation of a statute that it is delegated to administer. *Id.* at 31. Furthermore, we must strictly construe tax exemption statutes in favor of the taxing unit. *Ladies Club, supra* at 753.

"An intention on the part of the legislature to grant an exemption from the taxing power of the state will never be implied from language which will admit of any other reasonable construction. Such an intention must be expressed in clear and unmistakable terms, or must appear by necessary implication from the language used, for it is a well-settled principle that, when a special privilege or exemption is claimed under a statute, charter or act of incorporation, it is to be construed strictly against the property owner and in favor of the public. This principle applies with peculiar force to a claim of exemption from taxation." [*Id.* at 754, quoting 2 Cooley, Taxation (4th ed), § 672, pp 1403-1404.]

When we examine the relevant statutory language, we see that the act exempts from taxation "[t]he real estate with the buildings and other property located on the real estate on that acreage, owned and occupied by a nonprofit trust . . . ." MCL 211.7r. We agree with the Tax Tribunal's determination that the statute grants an exemption only to a nonprofit trust that owns the real estate on which the personal property subject to the tax is located.[4]

---

[4] Our Supreme Court has interpreted the term "nonprofit trust" to include nonprofit corporations. *Oakwood Hosp Corp v State Tax Comm*, 385 Mich 704, 708; 190 NW2d 105 (1971). Therefore, it is clear that ProMed qualifies as a "nonprofit trust" within the meaning of MCL 211.7r.

Acceptance of ProMed's argument would compel a conclusion that the statutory phrase "owned and occupied by a nonprofit trust" modifies only the phrase "other property," and does not modify the phrase "[t]he real estate with the buildings and other property located on [it] . . . ." However, the statute does not refer to personal property standing alone, but refers only to personal property located on real property owned and occupied by a nonprofit trust. Therefore, we conclude that ProMed's argument on this point is without merit. Construing the statutory language strictly in favor of respondent and giving deference to the Tax Tribunal's interpretation of the statute, we conclude that ProMed failed to prove its entitlement to exemption under MCL 211.7r.[5]

### IV. CHARITABLE PURPOSE EXEMPTION

ProMed next argues that it is entitled to an exemption from ad valorem taxation on its personal property under MCL 211.7o, the "charitable purpose exemption." The statute provides, in pertinent part: "[p]roperty owned and occupied by a nonprofit charitable institution while occupied by that nonprofit charitable institution solely for the purposes for which it was incorporated is exempt from the collection of taxes under this act." MCL 211.7o(1).[6] The Tax Tribunal ruled that ProMed failed to qualify for this exemption because ProMed had failed to document the amount of charity services that it provided to

---

[5] Given this conclusion, we need not decide whether ProMed used the subject personal property for "public health purposes" under MCL 211.7r.

[6] Because the Tax Tribunal issued its decision on October 18, 1999, we apply the statutory language in effect at that time.

members of the public. We agree that ProMed failed to carry its burden of proving entitlement to the claimed tax exemption.

In *Moorland Twp v Ravenna Conservation Club, Inc*, 183 Mich App 451, 457-458; 455 NW2d 331 (1990), this Court addressed a petitioner's claim to exemption under MCL 211.7o:

> We now address the RCC's claim to an exemption as a charitable organization. MCL 211.7o; MSA 7.7(4-l). In [*Michigan United Conservation Clubs v Lansing Twp*, 423 Mich 661, 671; 378 NW2d 737 (1985)], the following definition was reaffirmed as the proper test to apply for determining the existence of a charitable exemption:
>
> "[C]harity . . . [is] a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government."
>
> The proper focus of this test is whether the organization's activities, taken as a whole, constitute a charitable gift for the benefit of the general public without restriction or for the benefit of an indefinite number of persons. *MUCC, supra* at 673. [Original emphasis omitted.]

Although ProMed argues that it qualifies as a charitable institution under this definition, the Tax Tribunal concluded that it does not. ProMed argues that the Tax Tribunal's decision "impermissibly questions and contravenes the parties' sacrosanct stipulation" that ProMed provided "an appropriate level of charity care" consistent with its status as a nonprofit corporation. In effect, ProMed argues that the parties stipulated that ProMed is a charitable institution within

the meaning of MCL 211.7o. However, ProMed's argument is unsupported by the language of the parties' stipulation, which states:

> ProMed's activities are governed by a formal Charity Care Policy which requires ProMed to . . . provide an appropriate level of charity care to residents of the community whose care is not fully covered under governmental or private payment programs and who are not otherwise able to pay fully for their care. The charity care services which ProMed must provide include all medical care and diagnostic services available to other ProMed patients.

Clearly, the parties did *not* stipulate that ProMed actually provided an "appropriate level of charity care" to members of the public during the tax years at issue. Rather, the stipulation simply provided that ProMed's internal policies required ProMed to do so. ProMed failed to present to the Tax Tribunal any evidence that it complied with this internal charity policy. Further, ProMed failed to present evidence that its provision of charitable medical care constituted anything more than an incidental part of its operations.

In fact, it appears from the record that ProMed operates a fairly typical family medical practice, where patients are expected to pay for medical care received, either through private or governmental insurance programs. Although ProMed claims that it provides some medical care to indigent patients without charge, ProMed failed to provide any documentation regarding such services. If we were to accept ProMed's argument and reverse the Tax Tribunal's ruling in the present case, we would in effect be granting tax-exempt status to every doctor's office in the state, as well as every organization offering health-

related services, as long as those organizations are structured as nonprofit corporations and maintain policies of offering some "appropriate" level of charity medical care to indigent persons. We cannot conclude that the Legislature intended MCL 211.7o and 211.7r to create such a result.

Affirmed.